**TOLEDO–LUCAS COUNTY PORT AUTHORITY, et al., Plaintiffs,**

v.

**AXA MARINE & AVIATION INSURANCE (UK) LTD., et al., Defendants.**

No. 3:99CV7320.

United States District Court, N.D. Ohio, Western Division.

May 9, 2001.

---

Janine T. Avila, William M. Connelly, Steven R. Smith, Connelly, Jackson & Collier LLP, Toledo, OH, for Toledo–Lucas County Port Authority.

Mark E. Christensen, Jack C. Hsu, Kirsten L. Radler, Christensen & Ehret, Chicago, IL, for Atlas Assurance Company Ltd., Axa Marine & Aviation Insurance (UK) Ltd., Compagnie D'Assurances Maritimes, Cornhill Insurance Company Ltd., Hansa Re & Marine Ins. Co. (UK) Ltd., Phoenix Assurance PLC, Phoenix Assurance PLC. Per London Assurance, Skandia Marine Ins. Co., Sphere Drake Insurance PLC, Terra Nova Ins. Co. Ltd., Yorkshire Ins. Co. Ltd., Zurich Re (UK) Ltd.

Matthew J. Fink, Bollinger, Ruberry & Garvey, Chicago, IL, Robert J. Gilmer, Jr., Eastman & Smith, Toledo, OH, Robert S. Marshall, Bates & Carey, Chicago, IL, for Coregis Insurance Company, Mt. Airy Insurance Co.

Richard M. Kerger, Daniel F. Marinik, Kerger & Kerger, Toledo, OH, for Christiana General Ins. Corp. of New York, Colonia Insurance Company, Employers Mut. Cas. Co., Farmers Mutual Hail Co. of Iowa, Navigators Ins. Co., Reinsurance Co. of New York.

David L. Lester, Ulmer & Berne, Cleveland, OH, for Continental Insurance Company.

David W. Zoll, Zoll & Kranz LLC, Toledo, OH, for Zoll & Kranz, LLC.

## ORDER

PATRICK E. CARR, District Judge.

This is an insurance coverage case in which plaintiffs claim defendants have wrongfully denied coverage for the defense and settlement of lawsuits brought against the Toledo Lucas County Port Authority ("Port Authority"). Plaintiffs seek both declaratory judgment and monetary relief. Defendant the London Companies also seeks declaratory judgment establishing they have no legal obligation to plaintiffs. This court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending are plaintiffs' motions for partial summary judgment and defendants' motions for summary judgment. (Docs.145, 150, 130, 136). For the following reasons, plaintiffs' motions shall be denied and defendants' motions shall be granted.

### Background

Plaintiffs' claims arise out of payments made by them to resolve lawsuits brought against the Port Authority. The lawsuits were brought in connection with the Port Authority's operation of the Toledo Express Airport. The lawsuits alleged that the operation of Burlington Air Express caused excessive noise which harmed many individuals and their property.

The first lawsuit was filed against the Port Authority on June 4, 1993. Subsequently, from July 20, 1994 to April 6, 1998, ten more suits[1] alleging harm in relation to the excessive noise caused by the operation of Burlington Air Express were filed. Several of these suits alleged

---

1. In addition, the plaintiffs from the original 1993 lawsuit filed an amended complaint during this period. Their original nuisance claim was dismissed without prejudice in April, 1994.

claims of fraud in connection with the operation of Burlington Air Express against individual Port Authority employees. In an order filed August 7, 1995, and another filed February 8, 1996, in the Courts of Common Pleas of Lucas and Fulton Counties, respectively, all claims against individual Port Authority employees were dismissed for failure to state a claim. (Doc. 133, Ex. 17).

Without admitting liability under any portion of their policy, defendant the London Companies[2] unconditionally paid the Port Authority's attorneys' fees and litigation expenses incurred during the period that claims were pending against individual employees.

During a policy period from May 22, 1994, to May 22, 1995, the London Companies provided primary insurance coverage to the Port Authority. The policy provided occurrence-based coverage for damages on account of bodily injury and property damage. Additionally, the policy provided claims-made coverage for public officials liability. (Doc. 133, Ex. 1). Plaintiffs seek coverage under the public officials liability provision. In addition to the full limit of the public officials liability coverage, plaintiffs seek to recover the entire amount they expended in defense and settlement of the lawsuits. They argue they are entitled to recover these expenses under the policy's "Additional Expenses" provision, which provided for payment of, inter alia, all expenses for litigation, settlement, and investigation of claims and suits resulting from any covered occurrence. (*Id.* at 5).

During the same policy period, defendant Navigators Insurance Company ("Navigators")[3] issued the Port Authority a policy of excess coverage. The Navigators policy provided the Port Authority with coverage in excess of the London Companies' primary policy.

Also during this policy period, the Port Authority had an excess policy, including coverage for public officials liability, with plaintiff Coregis. Coregis has provided the Port Authority coverage relating to the nuisance lawsuits by contributing to the amount of the settlement of these suits. Plaintiffs now assert that the Coregis policy was intended to be a mono-line policy of insurance, excess to the Navigators policy. Thus, plaintiffs argue that Navigators should pay the entire sum expended by Coregis. In the alternative, plaintiffs argue that the Navigators and Coregis policies cover the same risks, and the two companies share liability equally for any settlement amounts not satisfied by the London Companies policy.

## Discussion

### I. The London Companies

The London Companies assert that coverage under the public officials liability provision in their policy applies only to claims made against individual employees, not claims against the entity.[4] Because the London Companies have already paid, without admitting any liability, attorneys' fees and defense expenses for the period

---

**2.** The insurance policy was issued by a group of insurance companies, collectively referred to as the London Companies.

**3.** Navigators, like the London Companies, is a group of insurance carriers jointly issuing one policy.

**4.** The London Companies first argue that coverage under the policy is not invoked because

the Port Authority failed to comply with the notice provisions of the policy. The arguments made by the parties in this area are extensive. Because I find the policy language defining public officials liability to be dispositive on the issue of the London Companies' liability, however, I do not reach these arguments.

during which claims against employees were pending, they argue that there can be no more liability imposed upon them. I agree.

The public officials liability provision states:

> The words 'Public Officials Liability', wherever used herein, shall mean any actual or alleged act, error ... by an officer and/or commissioner and/or employee and/or committee member in the discharge of his/her duties as such and claimed against him/her solely by reason of his/her capacity as such with a port or harbor commission named herein.... Underwriters shall only be liable for a claim of which the/an Assured first receives, within the term specified in this policy, written notice from any party intending to hold the/an Assured responsible for any wrongful act as enumerated above.

(*Id.* at 4).

■ An insurance policy is interpreted under the rules governing contract law. *Affiliated FM Ins. Co. v. Owens–Corning Fiberglas,* 16 F.3d 684 (6th Cir.1994). Where provisions of an insurance contract are reasonably susceptible of more than one interpretation, they will be construed against the insurer and in favor of the insured. *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988). "Where the terms of an insurance policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction." *Ledyard v. Auto Owners Mut. Ins. Co.,* 137 Ohio App.3d 501, 505, 739 N.E.2d 1 (2000).

■ I find that the policy language defining public officials liability unambiguously requires a claim to be made against an individual or individuals, whether the person or those people be an officer, commissioner, employee, or committee member of the Port Authority. The language requires two things: first, an act by one or some individuals as described above, and second, a claim against those individuals by reason of their capacity as a port or harbor officer, commissioner, employee, or committee member. The policy expressly requires the claim to be made against the individual based on his or her capacity as it relates to the port or harbor commission.

Under Ohio law, claim is defined as "a demand for something due or believed to be due (insurance) [or] a title to a debt, privilege, or other thing in the possession of another." *Fiorentino v. Lightning Rod Mut. Ins. Co.,* 114 Ohio App.3d 188, 193, 682 N.E.2d 1099 (1996). Thus, the policy language requires a demand made based on an act done by a specific individual or individuals.

The language defining public officials liability conveys that of the enumerated "Assureds", only individual persons receive coverage for acts under this portion of the policy. Plaintiffs argue that the language cannot be read to limit coverage in this manner because wherever the word "Assured" is used in the policy, the Port Authority can be inserted in its place. Plaintiffs assert then, that the second sentence, quoted above, can properly be read: "... Underwriters will only be liable for a claim of which the/an Port Authority first receives, within the term specified in this policy, written notice from any party intending to hold the/an Port Authority responsible for any wrongful act as enumerated above." Thus, plaintiffs argue, claims made solely against the Port Authority as an entity fall within the scope of public officials liability coverage.

I disagree with plaintiffs' argument because I do not find that the Port Authority can properly be inserted wherever the term "Assured" is used in the policy. The policy defines the term "Assured" as in-

cluding "The Named Assured and/or subsidiary, associated, affiliated companies or owned and controlled companies, their duly elected and appointed officials, commissioners, officers, employees and volunteers while working for and on behalf of the Port, as now or hereafter constituted. . . ." (Doc. 133, Ex. 1 at 2). Thus, the term "Assured" cannot always be properly substituted by "Port Authority", as the word "or" conveys. By specifying that an act be carried out by an individual, and that a claimant make a demand of that individual, the term "Assured" refers to any of the enumerated assureds who are individuals rather than entities. If the term "Assured" always meant Port Authority, the word "or" would not have been used in the definition of "Assured".

Next, even if plaintiffs are correct that the term "Assured", as used in the second sentence of the definition of public officials liability, includes the Port Authority as an entity, the requirements, as stated in the first sentence, that an act be carried out by an individual and that redress for harm be demanded against the individual remain unchanged. Even if the Port Authority is ultimately liable for the harm caused, which plaintiffs correctly argue would often be the case, a claim made against a specific individual for a single act for which he or she is responsible differs from a claim made against the entity itself.

Plaintiffs seem to recognize this difference in their argument for partial summary judgment against Navigators. Arguing that the London Companies' policy does not contain an exclusion for public officials liability in connection with airport operations [5], plaintiffs state "this Court should recognize that the London Companies acknowledged the distinction between public officials liability as regards airport operations and the Port Authority entity's liability for airport operations, and did not exclude public officials liability for airport operations in the policy year at issue." (Doc. 151 at 14). I recognize this distinction, and because the claims for which plaintiffs seek coverage were against the Port Authority entity rather than individuals affiliated with the authority, the London Companies have no liability.

## II. Navigators

Plaintiffs argue that the Navigators' policy is excess to the London Companies primary policy.[6] As such, they argue that, assuming the London Companies are liable under the public officials liability provision, Navigators is liable for the amount of loss sustained in excess of the London Companies' policy. Because I find that the London Companies' public officials coverage is not invoked in this case, there can be no excess public officials liability under the Navigators' policy.

Plaintiffs also argue that the Coregis policy was intended to be excess of the

5. The policy issued by the London Companies for the period prior to the policy at issue contained an exclusion of

    any Bodily Injury, personal Injury or Property Damage Liability arising out of the ownership, maintenance, use or operation of airfields, runways, buildings or other properties in connection with aviation activities, but in respect of Public Officials Liability, coverage does not apply to aircraft operations related to airfields, runways, hangars, buildings, constructions or other properties. . . .

The policy at issue contains the same exclusion except that the language excluding Public Officials Liability has been removed.

6. This opinion is limited, as are the parties' arguments, to the issue of whether liability exists under the Navigators' policy because of coverage in excess of the London Companies'. This opinion does not address possible liability for losses in excess of "$1,000,000 ultimate net loss in respect of each occurrence not covered by said underlying insurances." (Doc. 177 at 5).

Navigators policy. Accordingly, plaintiffs argue that Navigators is liable to Coregis for the amount Coregis has paid to the Port Authority. Even if plaintiffs are correct that the Coregis policy was intended to provide coverage in excess of coverage provided by Navigators, there is, nonetheless, no coverage invoked under the Navigators policy. Coregis' decision to provide coverage to the Port Authority for the nuisance lawsuits cannot create liability to Navigators where none exists under the terms of the Navigators policy.

Therefore, for the foregoing reasons, it is hereby

**ORDERED THAT**

1. Plaintiffs' motions for partial summary judgment be, and hereby are, denied; and

2. Defendants the London Companies' motion for summary judgment be, and hereby is, granted; and

3. Defendants Navigators' motion for summary judgment be, and hereby is, granted.

**So ordered.**