CONTINENTAL CASUALTY
COMPANY,

v.

COUNTY OF CHESTER,
Neil E. Hall, M.D.

Civil Action No. 01–CV–633.

United States District Court,
E.D. Pennsylvania.

Feb. 19, 2003.

Frank J. Lavery, Jr., Lavery, Faherty, et al., Harrisburg, PA, for Plaintiff.

Thomas C. Abrahamsen, West Chester, PA, for County of Chester, defendant.

Michele F. Conte, Powell, Trachtman, Logan, Carrle, Bowman and Lombardo, King of Prussia, PA, for Neal E. Hall, M.D., defendant.

## MEMORANDUM AND ORDER

SAVAGE, District Judge.

Continental Casualty Company ("Continental") brought this action seeking a declaration that it has no duty to defend and to indemnify its insured, the defendant County of Chester ("County"), pursuant to a public officials liability policy, against a four count counterclaim in a state court action.[1] Arguing that all claims against the insured are excluded from coverage because they arise out of a breach of con-

---

1. Jurisdiction in this declaratory judgment action is predicated on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

tract or out of debt financing, Continental now moves for summary judgment.[2]

Continental has not met its burden of demonstrating that the insurance policy excuses it from defending the County against the counterclaim asserting civil rights violations under 42 U.S.C. § 1983. Accordingly, Continental's motion for summary judgment will be denied and Continental must defend the County in the underlying state litigation.

## The Underlying Action

The County filed the underlying state court action for breach of contract against Neil E. Hall, M.D. ("Hall"). According to the complaint, the County and Hall entered into an agreement whereby Hall "agreed to acquire certain real property . . . to make certain improvements thereon, and to operate a health care services facility on the Property." (Complaint ¶¶ 3–4). The County provided $180,000.00 in development funding for the project. Hall's obligations under the agreement were secured by a mortgage in the amount of $180,000.00. (Complaint ¶¶ 5, 10). Hall had four years to complete construction and to open the health care facility to the public. (Complaint ¶ 7). After the four year period had expired and the facility had not been completed and opened, the County instituted the state court litigation to recover the $180,000.00 plus attorney's fees and costs. (Complaint ¶ 12).

Hall's rendition of the events differs significantly from the County's. In his answer and new matter,[3] Hall alleges that there was no construction deadline (New Matter ¶ 22); his obligation to reimburse the County was contingent on the occurrence of either of two conditions which had never occurred (New Matter ¶ 28); and,

his obligation was to have been reduced by 25% each year after the date of the agreement with no balance remaining after the fourth anniversary. (New Matter ¶ 28). In short, Hall maintains that his mortgage obligation terminated after four years and the County refused to release its lien on his property. (New Matter ¶ 28).

Hall responded further with a counterclaim in which he asserts causes of action for breach of contract (Count I), violations of his civil rights (Count II), a declaratory judgment (Count III), and violation of Pennsylvania's Mortgage Satisfaction Act (Count IV). The County now agrees that the claims stated in Counts I, III and IV of the counterclaim are not covered by the policy. In contention is the second count in which Hall avers a cause of action pursuant to 42 U.S.C. § 1983 alleging that the County arbitrarily and irrationally deprived him of his real property interest, deprived him of the use of the equity in the property and harmed his credit rating when it wrongfully refused to release his mortgage obligation. (Counterclaim ¶ 58). He claims the County officials acted with knowledge that various developers and other persons were interested in the property for retail development, and their actions were politically motivated. (New Matter ¶ 35).

The County demanded that Continental defend it against the counterclaim. Continental refused, contending that two separate policy exclusions relieve it of any duty to defend and indemnify the County. (Declaratory Judgment Complaint ¶¶ 26, 28).

The court must decide whether Continental has a duty to defend the County

---

**2.** This case was reassigned from the calendar of the Honorable Lowell A. Reed.

**3.** The allegations in the answer and new matter are incorporated in the § 1983 counterclaim.

against Hall's § 1983 counterclaim.[4] Continental argues it should be relieved of its duty to defend because the § 1983 claim arises out of a breach of contract and/or out of debt financing, both of which are excluded by the policy. Thus, the issue is whether the policy should be read to include or exclude the § 1983 counterclaim asserted in the underlying state litigation.

## Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In Pennsylvania, the interpretation of insurance contracts is a question of law for the courts to decide. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983)). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *Bowers by Brown v. Estate of Feathers*, 448 Pa.Super. 263, 671 A.2d 695, 696 (1995) (quoting *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 441 Pa.Super. 446, 657 A.2d 1252, 1255 (1995)).

▆▆▆ In deciding whether an insurer has an obligation to defend an insured, the court must determine the scope of coverage in the insurance policy itself and then ascertain whether the complaint against the insured states a claim which is potentially covered by the policy. *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649, 651 (1994). The duty to defend arises even if the underlying complaint has no basis in fact or is groundless, false or fraudulent. *Id.*

▆▆▆ A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901 (citing *Standard Venetian Blind*, 469 A.2d at 566). When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900–01 (citing *Standard Venetian Blind*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa.Super.2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1985)). However, the language of an insurance policy should not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999).

▆▆▆ The insured has the initial burden of establishing coverage under an insurance policy. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646, 651–52 (Pa.Super.1995). On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies. *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa.Super.2002). The insurer can sustain its burden only by establishing the exclusion's applicability by uncontradicted facts in the record. *See Butterfield*, 670 A.2d at 651–52; *Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275, 277 (1966). Policy exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d

---

4. The parties do not dispute that Continental issued the County the policy effective from January 1, 2000 to January 1, 2001. The policy is a "claims made" policy designed to cover all public officials for wrongful acts to which insurance applies. Hall filed his counterclaim on April 4, 2000.

Cir.1998) (citing *Standard Venetian Blind,* 469 A.2d at 566).

## Duty to Defend

 An insurance carrier's duty to defend is distinct from its duty to provide coverage; and, it is interpreted more broadly than the duty to indemnify. *Britamco,* 636 A.2d at 651. An insurer may have a duty to defend even though it may have no duty to indemnify. *The Frog, Switch & Mfg. Co., Inc., v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999). A duty to indemnify may not arise until later in the proceedings when the insured is found liable for a covered claim. *Id.*

 An insurer is obligated to defend the insured against any suit arising under the policy "even if the suit is groundless, false, or fraudulent." *Britamco,* 636 A.2d at 651 (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.,* 410 Pa. 55, 188 A.2d 320, 321 (1963)). Consequently, whenever a complaint filed against the insured could potentially come within the policy's coverage, the insurer's duty to defend is triggered. *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.,* 444 Pa.Super. 221, 663 A.2d 753, 755 (1995). Because the duty to defend is broader than the duty to indemnify, the complaint must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Roman Mosaic and Tile Co. v. Aetna Cas. and Sur. Co.,* 704 A.2d 665, 669 (Pa.Super.1997).

Applying these principles to this case, we examine the insurance policy and the allegations of the claims against the County. The facts are not in dispute. Thus, our task is to decide whether the insurer has a duty to defend under the policy as a matter of law.

## Scope of Coverage

The Public Officials Liability Policy ("Policy") issued to the County provides that Continental "will pay those sums that the insured becomes legally obligated to pay as compensatory civil damages arising out of a 'wrongful act' to which insurance applies." Policy, § I(1)(a). It further asserts that "[w]e will have the right and duty to defend any 'suit' seeking those damages." *Id.*

"Wrongful Act" is defined in the policy as follows:

> "Wrongful act" means any actual or alleged error or misstatement or act or omission or neglect or breach of duty, including misfeasance and nonfeasance, by the individual insureds in the discharge of their duties with the "public entity," individually or collectively, or in any matter to which this insurance applies claimed against them solely by reason of their being of [sic] having been duly elected or appointed officials. "Wrongful act" includes allegations of malfeasance, but only if they are ultimately proven to be groundless. This insurance does not apply to malfeasance if there is a final legal determination that such has taken place.

Policy, § VI(10).

The policy definition of a wrongful act includes misfeasance, nonfeasance and malfeasance. Policy, § VI(10). Continental must defend and indemnify claims for misfeasance and nonfeasance. With respect to claims for malfeasance, Continental's obligation to its insured is limited. Its duty terminates and it is not required to indemnify if there is a final legal determination of malfeasance. Thus, until the allegations are ultimately found to be lacking merit, Continental must defend a claim of malfeasance. Policy § VI(10).

■ Because the definitions of these terms have a significant bearing in this case and they are not defined in the policy, it is necessary to distinguish them. Misfeasance is the improper performance of a lawful act. *Brindley v. Woodland Vill. Rest., Inc.*, 438 Pa.Super. 385, 652 A.2d 865, 869–70 (1995) (quoting *Nelson v. Duquesne Light Co.*, 338 Pa. 37, 12 A.2d 299, 303 (1940)); *compare* BLACK'S LAW DICTIONARY 1015 (7th ed.1999). Nonfeasance is the failure to perform a legal duty. *Id.; compare* BLACK'S LAW DICTIONARY 1076 (7th ed.1999). Malfeasance, also known as misfeasance in public office, is a wrongful or unlawful act by a public official. *Bellis v. Board of Pensions and Ret.*, 160 Pa. Cmwlth. 314, 634 A.2d 821, 825 (1993) (quoting *Com. v. McSorley*, 189 Pa.Super. 223, 150 A.2d 570, 572 (1959)); *compare* BLACK'S LAW DICTIONARY 968 (7th ed.1999).

### The Breach of Contract Exclusion

■ The specific policy exclusion invoked by Continental states that coverage does not apply to "[a]ny 'claim' arising out of a breach of contract, or out of liability assumed by an insured under any contract or agreement." Policy, § I(2)(f).

Continental correctly points out that Hall contends the County breached the agreement when it refused to satisfy the mortgage and release the lien on his property as required by the agreement. Consequently, because the insurance policy excludes from coverage any claim arising out of a breach of contract, it has no obligation to defend any contract claim. The County agrees there is no coverage for count one of the counterclaim.

Continental argues that the other claims also arise out of this same breach of contract and are likewise excluded. The request for a declaration of contractual rights in the third count is specifically excluded because it seeks declaratory relief. Policy, § I(2)(b)(2). The cause of action under the mortgage satisfaction statute unquestionably arises out of the application of the written contract between the County and Hall. Therefore, Continental has no duty to defend the County against these two counts because they are excluded by the "arising out of a contract" provision, leaving only the § 1983 claim at issue.

If the § 1983 counterclaim is deemed as "arising out" of the contract, Continental has no duty to defend the County. On the other hand, if it is an independent tort claim, the exclusion does not apply and Continental must defend the County.

■ For coverage purposes, before a claim can "be construed as a tort action, the wrong ascribed to the defendant must be the *gist of the action with the contract being collateral.*" *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) (quoting *Phico Ins. Co.*, 663 A.2d at 757) (emphasis added). Consequently, when analyzing the policy and the allegations in the counterclaim, the focus is on what constitutes the gist of the particular count.[5] In other words, whether the "arising out of a breach of contract" exclusion applies turns on whether the cause of action is characterized as sounding in contract or in tort.

Hall's counterclaim alleges that the County failed to satisfy the mortgage and to release the lien on Hall's property as required under the agreement. (Counterclaim ¶ 57). This failure to act is nonfeasance which would be covered unless excluded by the policy. *See Brindley*, 652

---

5. The term "gist" has a particular meaning in the common law, indicating "[t]he ground or essence (of a legal action)." BLACK'S LAW DICTIONARY 698 (7th ed.1999).

A.2d at 870 (citing *Nelson,* 12 A.2d at 303) (stating nonfeasance is not doing something which ought to be done). The County now concedes that the nonfeasance claims stated in the first, third and fourth counts of the counterclaim are excluded by the breach of contract exclusion.

■■■ The counterclaim, however, alleges more than a classic breach of contract cause of action. In the second count, it raises a substantive due process claim under 42 U.S.C. § 1983. Specifically, it alleges that the County, through its officials, systematically obstructed the progress of the project in an effort to deprive Hall of his property rights. (New Matter ¶¶ 37–42).[6] Hall claims he suffered injury from arbitrary and irrational governmental action which was politically motivated. *See Blanche Rd. Corp. v. Bensalem Township,* 57 F.3d 253, 267–68 (3d Cir.1995). He asserts that the County officials' actions were calculated to deprive him of his constitutionally protected real property interest. *See Collins v. City of Harker Heights,* 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Acierno v. Cloutier,* 40 F.3d 597, 616 (3d Cir.1994).

■■■ "There can be no doubt that claims brought pursuant to § 1983 sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Section 1983 claims are "a species of tort" and must be interpreted against the "background of tort liability." *Id.* Thus, because the counterclaim averring that Hall's interest in developing his property was worthy of due process protection and that the County deprived him of his protected property rights by an arbitrary and irrational abuse of governmental power states a § 1983 cause of action, it asserts a tort cause of action and not a contract based one.

■■■ The distinction between a contract action and a tort action is found in the source of the duties imposed. Tort actions "lie from the breach of duties imposed as a matter of social policy while [contract actions] lie for the breach of duties imposed by mutual consensus" between the parties. *Id.* The due process rights raised by Hall are socially imposed. Public officials have a duty not to abuse their positions to deprive citizens of constitutional or statutory rights. *See Herr v. Pequea Township,* 274 F.3d 109, 117–18 (3d Cir.2001). It is the breach of this official duty and not of the contract which constitutes the gist of Hall's § 1983 claim.

Accepting the allegations in the counterclaim as true,[7] the § 1983 counterclaim clearly alleges wrongful acts in the nature of malfeasance independent of the contract. Because the gist of the wrongful

---

**6.** Other examples of this alleged systematic effort to deprive Hall of his property rights include a May 1998 newspaper article, a county official was quoted as stating that Hall had four years to build and open the health care facility. (New Matter ¶ 37). Another county official was quoted as saying that after two and a half years, no progress had been made on the facility. (New Matter ¶ 38). In 1999, another newspaper article contained additional allegedly false statements about the facility. (New Matter ¶ 39). A county official reportedly stated that Hall missed interim deadlines and was close to missing the final deadline, which would trigger the County's

right to seize the property. (New Matter ¶ 39). Finally, in articles published after the initiation of the state court litigation, County officials were quoted as saying that Hall's inaction and his refusal to ask for an extension of deadlines left them no choice but to file suit. (New Matter ¶¶ 40–42).

**7.** *See Roman Mosaic and Tile Co. v. Aetna Cas. and Sur. Co.,* 704 A.2d 665, 669 (Pa.Super.1997) (stating factual allegations in complaint are to be taken as true and complaint to be liberally construed, with all doubts resolved in favor of insured).

acts sound in tort, the "arising out of contract" exclusion does not apply. Therefore, even if Continental believes that Hall's civil rights allegations are fiction,[8] it still has a duty to defend the County.

### The Debt Financing Exclusion

Continental alternatively argues that because the dispute between Hall and the County implicates the mortgage used to secure the funding agreement, the claim falls within the policy's debt financing exclusion. The provision applies where the insured is the borrower. Here, the insured is the lender. Therefore, the policy provision relied upon by Continental is inapplicable.

 The policy exclusion states that insurance does not apply to "[a]ny debt financing, including but not limited to bonds, notes, debentures and guarantees of debt." Policy, § I(2)(j)(1). Debt financing is "[T]he raising of funds by issuing bonds or notes or by borrowing from a financial institution." BLACK'S LAW DICTIONARY 645 (7th ed.1999). The other activities referenced in this exclusion similarly refer to the insured's obligations and not to the obligations of third parties.

Continental's intent as expressed in the policy is to exclude coverage for claims arising out of the insured's obligations. On its face, the exclusion is clear and unambiguous. Accordingly, it must be given full effect. *See Standard Venetian Blind,* 469 A.2d at 566.

If Continental challenges the plain meaning of the provision, the exclusion language would be considered ambiguous because it is susceptible to two meanings. Where a policy provision is open to different interpretations by people of reasonable intelligence, it is ambiguous and must be resolved against the insurer. *Standard*

*Venetian Blind,* 469 A.2d at 567. Therefore, Continental's argument under this analysis would likewise fail.

### Conclusion

Applying the standards for insurance contract interpretation and resolving all doubts in favor of the insured, we find that the allegations in the § 1983 cause of action in Hall's counterclaim constitute "wrongful acts" as defined in the policy and do not fall within either policy exclusion raised by the insurer. Therefore, Continental must defend the County with respect to the § 1983 claim.

### *ORDER*

AND NOW, this 19th day of February, 2003, upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 16) and the Response of County of Chester to Plaintiff's Motion for Summary Judgment, it is **ORDERED** that plaintiff's motion is **DENIED**.

It is **DECLARED** that Continental Casualty Company is responsible to defend County of Chester in the underlying state court action.

This case is **CLOSED**.

---

**8.** This court is not required to and does not determine whether Hall can establish a valid claim under 42 U.S.C. § 1983. It is for the state court to decide.