*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0128P (6th Cir.)
File Name: 04a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TOLEDO-LUCAS COUNTY
PORT AUTHORITY; COREGIS
INSURANCE CO.,
*Plaintiffs-Appellants,*

v.

AXA MARINE & AVIATION
INSURANCE (UK), LTD., et al.,
*Defendants-Appellees.*

No. 02-4120

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 99-07320—James G. Carr, District Judge.

Argued: March 11, 2004

Decided and Filed: May 6, 2004

Before: MOORE, SUTTON, and FRIEDMAN, Circuit
Judges.[*]

_____

[*] Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

_____

## COUNSEL

**ARGUED:** Steven R. Smith, CONNELLY, JACKSON & COLLIER, Toledo, Ohio, M. Charles Collins, EASTMAN & SMITH LTD., Toledo, Ohio, for Appellants. Jack C. Hsu, CHRISTENSEN & EHRET, Chicago, Illinois, Stephen D. Hartman, KERGER & KERGER, Toledo, Ohio, for Appellees. **ON BRIEF:** Steven R. Smith, Janine Thompson Avila, Tammy Geiger Lavalette, CONNELLY, JACKSON & COLLIER, Toledo, Ohio, M. Charles Collins, Robert J. Gilmer, Jr., EASTMAN & SMITH LTD., Toledo, Ohio, for Appellants. Jack C. Hsu, Kirsten R. Waack, CHRISTENSEN & EHRET, Chicago, Illinois, Stephen D. Hartman, Richard M. Kerger, KERGER & KERGER, Toledo, Ohio, Mark E. Christensen, CHRISTENSEN & EHRET, Chicago, Illinois, for Appellees.

_____

## OPINION

_____

SUTTON, Circuit Judge. At issue in this insurance-coverage dispute is the scope of a "Ports Liability Policy" (the "Policy") that the Toledo-Lucas County Port Authority purchased from a group of insurance companies in 1994. The Policy covers, among other things, "Public Officials Liability," which is defined as "any actual or alleged act, error, . . . omission and/or breach of duty by an officer and/or . . . employee [of the Port Authority] . . . in the discharge of his/her duties . . . and claimed against him/her solely by reason of his/her capacity as such with [the Port Authority]." This appeal presents two questions about the scope of the provision: (1) whether the Public Officials Liability portion of the policy covers the Port Authority as well as Port Authority officials and employees, and (2) if so, whether a

formal claim or demand must be made against an individual official or employee in order for the Port Authority to invoke the coverage. The better reading of the Policy, in our view, is that it covers the Port Authority as well as Port Authority officers and employees and that a formal demand or claim against an individual official is not a condition of coverage. Because the district court held otherwise and granted summary judgment in favor of the defendant insurance companies on this basis, we reverse the judgment below and remand the case for further proceedings consistent with this opinion.

## I.

### A.

The Toledo County Port Authority is a public entity organized under Ohio law. *See* Ohio Rev. Code Ann. § 4582.01 *et seq.* In 1994, the Port Authority purchased a "Ports Liability Policy" from the London Companies—a group of 12 insurance companies located in several foreign countries. The Policy identifies the following as the insured parties:

> ASSURED: Toledo-Lucas County Port Authority and as per Endorsement No.1.

JA 948. Endorsement No.1 in turn states:

> It is hereby understood and agreed that the Named Assured shall read:

> TOLEDO-LUCAS COUNTY PORT AUTHORITY AND ANY SUBSIDIARY, ASSOCIATED, AFFILIATED COMPANIES OR OWNED AND CONTROLLED COMPANIES, THEIR DULY ELECTED AND APPOINTED OFFICIALS, COMMISSIONERS, OFFICERS, EMPLOYEES AND

> VOLUNTEERS WHILE WORKING FOR AND ON BEHALF OF THE PORT.

> All other terms and conditions remain unchanged.

JA 947. The Certificate of Insurance similarly says that the Policy is "[i]n favor of [the] Toledo-Lucas County Port Authority and as per Endorsement No. 1." JA 946.

The Policy also includes a form definition of "Assured," which provides that "[t]he unqualified word 'Assured'" means:

> (a) The Named Assured and/or subsidiary, associated, affiliated companies or owned and controlled companies, their duly elected and appointed officials, commissioners, officers, employees and volunteers while working for and on behalf of the Port, as now or hereafter constituted . . .

> (b) any officer, director, commissioner, stockholder, partner or employee of the Named Assured, while acting in his capacity as such . . . .

JA 951–52.

Given an effective date of May 22, 1994 through May 22, 1995, the Policy provides (1) occurrence-based coverage for bodily injury, personal injury, property damage, advertising liability and additional expenses and (2) claims-made coverage for public officials liability. Occurrence-based coverage applies when "a negligent or omitted act occurred during the period of the policy, whatever the date of claim against the insured," while claims-made coverage applies when "a negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred." 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 1:5 (3d ed.

2003); *see St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n.3 (1978).

The core promise of the Policy states:

I.     INSURING AGREEMENTS:

1.     COVERAGE

In the event of an occurrence happening during the annual period of this policy but, in respect of Public Officials Liability in the event that notice of an occurrence is first made in writing by and/or against the Assured and received by Underwriters or Underwriters' representatives set forth in Item 4 of the Declarations during the annual period of this policy, *Underwriters will pay on behalf of the Assured* for that amount of Ultimate Net Loss which the Assured shall be obligated to pay by reason of the liability:

  (a)  Imposed upon the Assured by law, including all Protection and Indemnity risks of whatsoever nature . . .

*for damages on account of*:

  (i)   Bodily Injury

  (ii)  Personal Injury

  (iii) Property Damage

  (iv)  Advertising Liability

  (v)   *Public Officials Liability*

  (vi)  Additional Expenses

caused by or arising out of any occurrence at any of the Assured's premises, and/or by operations and/or activities anywhere in the world.

JA 950 (*emphasis* added).

After stating the insurance companies' promise to "pay on behalf of the Assured . . . for damages on account of . . . Public Officials Liability," the Policy specifically defines "Public Officials Liability":

6.     PUBLIC OFFICIALS LIABILITY

The words "Public Officials Liability", wherever used herein, shall mean any actual or alleged act, error, misstatement, neglect, omission and/or breach of duty (including, but not limited to, misfeasance, malfeasance and/or non-feasance) by an officer and/or commissioner and/or employee and/or committee member in the discharge of his/her duties as such and claimed against him/her solely by reason of his/her capacity as such with a port or harbor commission named herein. Notwithstanding when the actual or alleged event giving rise to a claim under this section of the policy may have or be deemed to have occurred, Underwriters shall only be liable for a claim of which the/an Assured first receives, within the term specified in this policy, written notice from any party intending to hold the/an Assured responsible for any wrongful act as enumerated above.

JA 953.

In view of the Policy's $3 million limit, the Port Authority purchased additional insurance. The first excess policy was issued by a group of insurance companies (the "Navigators Group") composed of Navigators Insurance Company, The Reinsurance Company of New York, Christiana General Insurance Corporation of New York, Colonia Insurance

Company, Employers Mutual Casualty Company and Farmers Mutual Hail Insurance Company of Iowa. The second excess policy was issued by Coregis Insurance Company.

**B.**

Between 1993 and 1998, several lawsuits were filed against the Port Authority concerning the operation of the Toledo Express Airport—more specifically, concerning the noise created by Burlington Air Express's flights in and out of the airport. The first of these lawsuits was filed in June 1993 by Joseph and Winifred Kagy and several other citizens of Fulton County, Ohio. The *Kagy* plaintiffs claimed nuisance, inverse condemnation and violations of equal protection by the Port Authority, but did not allege any specific wrongful acts by Port Authority employees and did not name any Port Authority employees as defendants.

On July 20, 1994, Richard and Jane McQuade filed a second lawsuit, which did name individual Port Authority employees as well as the Port Authority itself as defendants. The complaint alleged that the named employees (and other unnamed employees) of the Port Authority committed fraud and other wrongful acts in enticing Burlington Air Express to establish a hub at the Toledo Express Airport. The complaint further alleged that the Port Authority employees acted at all times as agents of the Port Authority, that the Port Authority acted by and through its employees, and that the Port Authority was liable for the intentional, reckless and/or negligent acts of its employees.

Within days of the filing of the *McQuade* lawsuit, the Port Authority notified the London Companies of the suit and asked the London Companies to determine whether the suit was covered by the Policy, including its provision for Public Officials Liability coverage. The London Companies withheld coverage, asserting that the Policy did not cover liability arising from "airport activities." All parties now agree that the stated reason for withholding coverage was incorrect and that Public Officials Liability coverage under the Policy does include airport activities.

Numerous other lawsuits followed, all containing similar allegations against the Port Authority and many of its individual employees. After *McQuade*, even the *Kagy* plaintiffs amended their complaint to include allegations and claims against individual Port Authority employees as well as the Port Authority itself.

By February 8, 1996, however, all of the claims against the *individual* Port Authority employees had been dismissed for failure to state a claim, leaving only the claims against the Port Authority. In September 1999, faced with an imminent state-court jury trial on the issue of damages to the property owners, the Port Authority settled the remaining claims for $4.6 million.

While this settlement ended the noise-related litigation against the Port Authority, it did not end the coverage dispute between the Port Authority and its insurers. Without admitting liability, the London Companies paid the Port Authority's attorney's fees and defense costs for the period during which claims were pending against individual employees, but refused to pay for anything after the claims against the individual employees had been dismissed in February 1996, including any of the $4.6 million settlement. The excess insurance providers, the Navigators Group and Coregis, followed suit, refusing to provide coverage under their policies.

### C.

On May 21, 1999, the Port Authority filed this state-law diversity lawsuit against the London Companies, Navigators and Coregis, claiming that the companies had reneged on their insurance obligations. As this is a suit between citizens of different States and countries—the Port Authority is an Ohio public entity, Coregis is an Indiana corporation with its principal place of business in Illinois, the London Companies are organized and headquartered in foreign countries and the Navigators Group is composed of companies organized and having principal places of business in New York, California and Iowa—diversity jurisdiction exists under 28 U.S.C. § 1332. After the filing of this lawsuit, Coregis agreed to provide coverage and paid $3.45 million of the cost of the settlement. After providing this coverage, Coregis realigned itself as a co-plaintiff in the case, then claimed that Navigators was responsible for the entire amount paid by Coregis. The Port Authority and Coregis eventually amended their joint complaint to add a claim of bad faith denial of coverage. Both sides moved for summary judgment.

On May 9, 2001, the district court granted summary judgment in favor of the London Companies and Navigators. In the district court's view, the Public Officials Liability provision applies only to claims against individual employees, not to claims against the Port Authority as an entity. *Toledo-Lucas County Port Authority v. Axa Marine & Aviation Ins.*, 147 F. Supp. 2d 849, 852 (N.D. Ohio 2001) ("[O]f the enumerated 'Assureds', only individual persons receive coverage for acts under [the Public Officials Liability] portion of the policy."). Acknowledging that under Ohio law ambiguous provisions of an insurance policy drafted by the insurer must be construed in favor of the insured, the court held that the terms of the Policy were clear and unambiguous. "The language requires two things," the district court reasoned: "first, a[] [wrongful] act by one or some individuals . . . , and second, a claim against those individuals by reason

of their capacity as a port or harbor officer, commissioner, employee, or committee member." *Id.* "By specifying that an act be carried out by an individual, and that a claimant make a demand of that individual," the court continued, the term "'Assured'" under the Public Officials Liability coverage "refers to any of the enumerated assureds who are individuals rather than entities." *Id.* at 853.

Bolstering this interpretation, the district court explained, is the Policy's form definition of the term "Assured," which includes "[t]he Named Assured *and/or*" a number of other parties. *Id.* The court concluded that "the term 'Assured' cannot always be properly substituted by 'Port Authority', as the word 'or' conveys." *Id.* Lastly, "[b]ecause . . . the London Companies' public officials coverage is not invoked in this case," the court reasoned that "there can be no excess public officials liability under the Navigators' policy." *Id.*

In a separate order, the district court granted summary judgment to the London Companies and Navigators on the bad-faith claims, reasoning that without the possibility of coverage in the first instance, Ohio law recognizes no claim for bad faith denial of coverage. The court entered a final judgment in favor of the defendants.

Plaintiffs timely appealed the district court's judgment, which we review de novo. *See Henry v. Wausau Bus. Ins. Co.*, 351 F.3d 710, 713 (6th Cir. 2003).

### II.

The parties agree that Ohio law governs this dispute. When the "terms of an insurance policy are clear and unambiguous," Ohio law requires a court to "appl[y] [them] to the facts without engaging in any construction." *Ledyard v. Auto-Owners Mut. Ins. Co.*, 739 N.E.2d 1, 3 (Ohio Ct. App. 2000) (citation and quotation omitted). Conversely, when the insurer has drafted the contract and the "provisions of a

contract of insurance are reasonably susceptible of more than one interpretation," a court must "construe[] [the terms] strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988).

With these canons of construction in mind we must address two questions in this case: (1) whether the Public Officials Liability portion of the Policy covers the Port Authority in addition to Port Authority officials; and (2) if so, whether a formal claim or demand must have been made against an individual official or employee in order for the Port Authority to obtain coverage.

**A.**

The first question lends itself to a relatively straightforward analysis. The Policy's core promise is made by the insurer to "the Assured." The insurer promises to "pay on behalf of the Assured" for net losses "which the Assured shall be obligated to pay by reason of the liability [] imposed upon the Assured . . . for damages on account of . . . Public Officials Liability." JA 950. "Public Officials Liability" coverage, then, covers not just "Public Officials," but any "Assured" who has to pay damages on account of Public Officials Liability.

One such "Assured" under the Policy is the Port Authority. The Certificate of Insurance says so; Policy Page 1 says so; and the generic definition of "Assured" contained in the Policy says so. As such, the Port Authority enjoys Public Officials Liability coverage.

Attempting to counter this analysis, the defendant insurance companies point out that the language "and/or" in clause (a) of the generic definition of "Assured" indicates that the term has different meanings depending on the context in which it is used. Sometimes the term refers to the "Named Insured" (the Port Authority), and sometimes it refers to the other parties listed in clause (a)—namely, the Port Authority's "subsidiary, associated, affiliated companies or owned and controlled companies, their duly elected and appointed officials, commissioners, officers, employees and volunteers while working for and on behalf of the Port." JA 947. When it comes to Public Officials Liability, they argue, the term "Assured" refers only to Port Authority employees and officials.

This argument, however, ignores several more telling clues to the contract's meaning. First and foremost, it ignores the more specific language inserted in the Certificate of Insurance, in Policy Page 1 and in Endorsement No. 1, all of which identify the Port Authority as an "Assured" without limitation. Ohio law makes it clear that if two contract provisions are inconsistent, the specific, typed portion of a contract will prevail over the generic, form portion. *See Malcuit v. Equity Oil & Gas Funds, Inc.*, 610 N.E.2d 1044, 1046 (Ohio Ct. App. 1992).

Second, the defendants' position ignores clause (b) of the generic definition of "Assured," which specifically identifies "any officer, director, commissioner, stockholder, partner or employee of the Named Assured, while acting in his capacity as such," as an "Assured." JA 952. The identification of employees of the Port Authority in clause (b) indicates that the "employees" referred to in clause (a)—the clause to which the "and/or" language applies—are employees of "subsidiary, associated, affiliated companies." So while the disjunctive "or" (or, more precisely, "and/or") is used *within* clause (a), the Policy does not say whether clauses (a), (b) and the others are disjunctive or conjunctive as they relate to each other. In the absence of an "and" or an "or," or even an "and/or" *between* any of the clauses, the use of the word "includes"—as in, "[t]he unqualified word 'Assured', wherever used in [the] Policy, *Includes*" the parties identified in clauses (a) through (d), JA 951–52—suggests that we should read the clauses conjunctively. Doing so, the Port

Authority (identified in clause (a)) and its employees (identified in clause (b)) are each an "Assured" for purposes of Public Officials Liability coverage.

This reading of the policy not only accords with its terms and the pertinent rules of construction but it also accords with common sense. It is hard to imagine the Port Authority deciding to purchase coverage for its employees but not for itself in this setting, and indeed the defendant insurance companies have offered no reason why a governmental entity would purchase such a policy. Because state law generally immunizes governmental employees acting within the scope of their employment from liability for damages, the *only* function of public officials liability coverage in most cases will be to insure the governmental entity itself. *Compare* Ohio Rev. Code Ann. § 2744.03(A)(6) (immunity for employees of political subdivisions), *with id.* § 2744.02(B) (liability of political subdivision for damages caused by the wrongful acts of its employees). *Cf. City of Sterling Heights v. United Nat'l Ins. Co.*, No. 03-72773, 2004 WL 252091, at *6–8 (E.D. Mich. Feb. 11, 2004) (holding that insurance companies had a duty to defend and indemnify the City and a public official under public officials liability coverage); *Continental Cas. Co. v. County of Chester*, 244 F. Supp. 2d 403, 405–06 (E.D. Pa. 2003) (holding that the insurer had a duty to defend and indemnify the County against civil rights claims under its public officials liability coverage).

In the final analysis, had the parties intended the Policy (oddly enough) to cover employees for Public Officials Liability, but not the Port Authority itself—an intention capable of being simply stated—one would expect more clarity on the point than this Policy provides. Having failed to provide the requisite clarity, the author of the Policy, the defendant London Companies, cannot now overcome the ambiguity-default canon of construction, which requires us to give the Port Authority the benefit of the doubt and read the

Policy to cover the Port Authority and its employees for Public Officials Liability.

**B.**

The second question is whether the Port Authority may recover "for damages on account of . . . Public Officials Liability" only if a claim has also been made against an individual official. In our view, the Policy in general and the definition of "Public Officials Liability" in particular do not provide a natural home for such a limitation, and at all events the ambiguity of this interpretation precludes us from construing the Policy in favor of its drafter, the London Companies.

The Public Officials Liability provision requires an "actual or alleged" wrongdoing "by an officer [or] . . . employee" "in the discharge of his/her duties as such" and "*claimed against him/her* solely by reason of his/her capacity as such with a port or harbor commission named herein." JA 953 (emphasis added). As an initial matter, the Policy nowhere defines the term "claimed." Nor do dictionary definitions resolve the question. One frequently-used definition ("[t]o demand, ask for, or take as one's own") suggests that the Policy requires a lawsuit to be filed or a demand for money to be made against an employee, while the other frequently-used definition ("[t]o state to be true . . . [or to] assert or maintain") suggests that an allegation of wrongdoing by an employee contained in a lawsuit against the Port Authority alone suffices to invoke coverage. *The Am. Heritage Dictionary of the English Language* 341 (4th ed. 2000).

The context in which the words appear, however, undermines the defendant insurance companies' argument. The phrase "claimed against" modifies "any actual or alleged act [or] error." The only definition of "claimed" that makes sense in this setting is the second one ("[t]o state to be true . . . [or to] assert or maintain") because "act[s]" and "error[s]"

are asserted against employees, not demanded of them. Indeed, in each of the five instances in which the verb "claimed" appears in the Policy, the words "alleged," "asserted" or "maintained" can be substituted without noticeably altering the meaning.

Nor, contrary to the defendant insurance companies' position, does this interpretation render the "claimed against" language "superfluous." The provision requires wrongdoing "claimed against [an employee] *solely* by reason of his/her capacity as such." JA 953 (emphasis added). As the "solely" language suggests, this provision is designed to preclude coverage when a plaintiff sues the Port Authority or an employee for damages caused by an employee who is *not* acting solely in an official capacity, which is a perfectly understandable exclusion and one that gives content to the "claimed against" language and to the "asserted" against interpretation of it offered by the Port Authority. Were the point of this language to exclude coverage when a plaintiff decides to sue the Port Authority for its employee's wrongdoing, one would not expect such a significant limitation on coverage to be tucked away in a phrase addressing the capacity in which the employee acts.

Also unavailing is the argument that "of the over twenty-five times that the words 'claim' or 'claims' appear in the policy, never are they used as a substitute for 'alleged' or 'assert.'" London Companies' Br. at 29. In those instances, the words "claim" and "claims" are used as nouns (*e.g.*, requiring that a claim be made by the Port Authority), not as verbs (*e.g.*, requiring an act or error claimed against an employee). Had the London Companies used the noun "claim" instead of the verb "claimed" in this provision, we quite agree that the definition of Public Officials Liability might mean what they suggest it means—liability resulting solely from claims made against an employee. But they did not use that language.

The London Companies also err in suggesting that this interpretation creates a form of coverage that sweeps so broadly that it would make the other forms of coverage under the Policy (*e.g.*, Bodily Injury and Personal Injury) unnecessary because any allegation against an entity is inherently one based upon the conduct of its individual employees. This argument misses the mark because the other provisions do not contain the limitation that the Public Officials Liability provision has—namely, wrongdoing alleged against an employee.

In the end, while we believe this interpretation represents the better reading of the policy, the best that can be said of the defendant insurance companies' contrary arguments is that they raise an ambiguity on the point. And under those circumstances, as noted above, Ohio law requires us to apply the ambiguity-default canon of construction and to give the Port Authority the benefit of the doubt. Public Officials Liability coverage, accordingly, does not necessarily require a claim or demand to be made against an individual employee; a claim or demand against the Port Authority for damages on account of an individual employee's wrongdoing solely in his or her capacity as a Port Authority employee will suffice.

### III.

The parties have briefed several other issues that the district court did not have an opportunity to address in view of the court's ruling that the Port Authority is not an Assured under the Policy and that a lawsuit or demand made against an individual employee is a precondition of coverage. The district court did not decide whether the statute of limitations bars any of these claims; whether the *Kagy* lawsuits provided notice of a Public Officials Liability claim before the effective date of the Policy, thus precluding coverage under the Policy; and whether the Navigators Group owes coverage to the Port Authority. And what the district court elsewhere did

decide—that the defendants were entitled to summary judgment on the bad-faith claims and that Coregis lacked standing to bring a bad-faith claim against the London Companies—was premised on the court's initial ruling that the Public Officials Liability portion of the Policy did not insure the Port Authority.  Since we disagree with that premise and since the district court did not reach the other issues, we leave it to the district court to address these questions in the first instance.

## IV.

For the foregoing reasons, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.