**XXL OF OHIO, INC. Plaintiff**

v.

**CITY OF BROADVIEW HEIGHTS, et al. Defendants/Third–Party Plaintiffs**

v.

**SCOTTSDALE INDEMNITY COMPANY Third–Party Defendant**

**No. 1:01 CV 2514.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 20, 2004.

Douglas J. Maragas, Bend, OR, Paul A. Mastriacovo, Canton, OH, for Plaintiff.

Kevin P. Weiler, Sr., Weiler & Associates, Brecksville, OH, Carl E. Cormany, Mazanec, Raskin & Ryder, Solon, OH, James A. Climer, Robert F. Cathcart, IV, Mazanec, Raskin & Ryder, Cleveland, OH, for Defendants.

Kevin P. Weiler, Sr., Weiler & Associates, Brecksville, OH, Robert F. Cathcart, IV, Mazanec, Raskin & Ryder, Cleveland, OH, for Third Party Plaintiff.

Carl E. Cormany, Mazanec, Raskin & Ryder, Solon, OH, Timothy D. Johnson, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Third Party Defendant.

## MEMORANDUM OF OPINION AND ORDER

MATIA, Chief Judge.

The salient facts in this matter were set forth in the magistrate judge's Report and Recommendation (Doc. 127), and this Court will not repeat them. Defendants/Third–Party Plaintiffs (referred to collectively hereinafter as "the city") are seeking (1) to hold Third–Party Defendant Scottsdale Indemnity Company ("Scottsdale") liable to indemnify the city for the

amount paid to plaintiff XXL of Ohio, Inc., in settlement of a civil rights lawsuit involving the city's enforcement of its sign ordinance, and (2) to obtain a ruling from this Court that Scottsdale was obligated to defend the city against plaintiff's claim. Both the city and Scottsdale filed motions for summary judgment.

The magistrate judge recommended to the Court that Scottsdale's motion be granted and that the city's be denied. The city filed Objections (Doc. 131), to which Scottsdale responded (Doc. 132). The Court considered the matter *de novo*, and upon review of the motions, the briefs in opposition, the objection filed by the city and Scottsdale's response thereto, the Court overrules the city's objections and adopts the magistrate judge's Report and Recommendation as its own.

For the reasons stated in the Report and Recommendation, Scottsdale's motion for summary judgment will be granted, and the city's motion will be denied. Although the Court agrees with the city that there was no "claim" prior to the effective date of the policy, that finding avails the city nothing because the Court also finds that the "public officials wrongful act" took place prior to the policy period and the city had knowledge of circumstances which could reasonably be expected to give rise to a "claim." Based upon this finding, both the indemnification claim and the defense demand are defeated by the following unambiguous provision of the insurance policy:

### SECTION II–EXCLUSIONS

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured: ...

8. Arising out of:
 a. Any "public officials wrongful act" which takes place prior to the policy period if the insured had knowledge of circumstances which could rea-

sonably be expected to give rise to a "claim"; ....

Accordingly, Scottsdale's motion for summary judgment (Doc. 122) is granted, and the city's motion for summary judgment (Doc. 121) is denied.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

Docket ## 121, 122

HEMANN, United States Magistrate Judge.

This case is before the magistrate judge on referral. Pending is the motion of defendants/third-party plaintiffs, the City of Broadview Heights, the ex-mayor of the City of Broadview Heights, and current and past members of the City of Broadview Heights' council (collectively, "Broadview Heights" or "the city") for summary judgment ("Pl. mot."; Docket # 121). Also pending is the motion of third-party defendant, Scottsdale Indemnity Company ("Scottsdale") for summary judgments ("Def. mot."; Docket # 122). Both motions are opposed. For the reasons given below the magistrate judge recommends that the court grant Scottsdale's motion for summary judgment and overrule Broadview Heights' motion.

### I. Background

Plaintiff, XXL of Ohio, Inc. ("XXL"), is an Ohio corporation which owns and operates the Tallyho Motel ("the motel") in Broadview Heights. The motel is located on State Route 82 and is about a tenth of a mile from Interstate 77 ("I–77").

Broadview Heights adopted a comprehensive sign ordinance ("the sign code") on November 5, 1990. The sign code governed commercial and non-commercial signs, and it classified signs by use type and structural type, with the classification "use type" further divided into permanent and temporary signs. The sign code set

forth where, when, and how signs may be erected and maintained according to use and structural type and required a permit to erect, paint, relocate or alter any sign except certain temporary signs. One provision of the sign code banned pole signs.

The sign code as originally enacted required the removal of all nonconforming signs by November 5, 1995. This deadline was later extended to November 5, 1996. A later revision of the ordinance required the removal of nonconforming signs, including those signs which existed and were permitted prior to passage of the sign ordinance, when the business or activity to which the sign referred changed ownership or requested a sign change. The city was authorized to remove a nonconforming sign as a nuisance if the sign's owner failed to remove the sign when ordered to do so by the Building Commissioner.

XXL's signage included a pole sign visible from I–77 and a second pole sign not visible from the highway. The second pole sign was shared with a restaurant owned by Arnold Davis ("Davis") and located in front of the motel. These signs predated passage of the sign ordinance and were nonconforming signs under the ordinance. Plaintiff bought the motel after passage of the sign ordinance and changed the motel's signs to reflect the new name of the motel.

The president and board chair of XXL, Tally Maragas ("Maragas"), appeared before Broadview Heights' Architectural Review Board ("the board") on August 1, 2001. Maragas sought a variance from the board for the signs at the Tallyho Motel. The board overruled his petition by a vote of five to one. After the vote, the following exchange occurred between Maragas and Daniel Kaczor ("Kaczor"), representing the board [Note: _____ indicates an inaudible comment]:

Mr. Maragas: Well, the only thing I can say, gentlemen, is I'm sorry I bought this property. I improved the quality. I come here to do something constructive ... the chain of commerce continues. The rules of law _____ to any individual. If I had known your rules were like that I wouldn't have bought the property to begin with. But I think that Daniel here (Mr. Kaczor) expressed it very brilliantly here, basically we have a hotel here that's down in the dump. We've got a dump right down the street from it and I didn't even know about that. The trucks come by every day and put trash right on our place and we're trying to beautify it. But anyway, besides that. I think that as a citizen, and a productive citizen, I think that basically what we need is more productivity and less [sic] and some variance in the regulations. The regulations you have here basically should have a variance to it, for this specific purpose. If you sat in my shoes and invested the kind of money I invested there, and you tell me you deprive me of my right to have a sign. That's what you're saying to me. You're really taking my property without due process. Because I can't do any business. Mr. Kaczor is right. I will be out of business without a sign. There's no question about it.

Mr. Kaczor: I would suggest, number one, that you sit down with our zoning inspector, our law director, possibly Mr. Jansik or somebody else in the administration and find a way of working this out so that, number one, that there'll be some substantial reason and, number two [. . . .]

Mr. Maragas: Here's the thing, I've been in the business [. . . .]

Mr. Kaczor: May I please finish?

Mr. Maragas: Excuse me. Go ahead. I'm sorry.

Mr. Kaczor: _____ and provide whatever _____ figures we can as to the improvements to this hotel and possibly the sign could be redesigned so that it becomes more acceptable and possibly there'll be a chance. But I think there are just too many things going on here with the design of the sign, in my opinion, that it can't be approved in the state that it's in right now. And since you already applied for the sign, you've already been before the board, you are entitled to temporary signs and those temporary signs [. . . .]

Mr. Maragas: I appreciate the fact that the City has given me a chance to open a hotel with some signs. I had to take self help so I could pay my bills. That's the reason why we did. We didn't know the regulations of this state. I've been developing for 45 years and never ran into a situation like this. This is over reaching. There is no reason why a Planning Commission and a Council has to approve signs. Why can't you make a regulation?

Mr. Kaczor: Look, we don't make the laws.

Mr. Maragas: I know that. I know you don't make the laws. The only thing I'm trying to do is be productive. That's all I'm trying to do. I want to thank you for your time. I appreciate it.

---

1. The description of events given above as occurring on August 16, 2001 is supported by an affidavit by Maragas. *See* Supplemental affidavit of Maragas, Exhibits, Exh. 8–A, p. 2. The affidavit was filed on June 28, 2002, and it states that the events described above occurred on August 16, 2002. That, of course, is impossible. A telephone conversation

Verbatim Minutes, Architectural Review Board, August 1, 2001; Exhibits to Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Exhibits"; Docket # 58), Exh. 47, pp. 15–16.

On or about August 16, 2001[1] Maragas and his counsel had a teleconference with Kevin Weiler ("Weiler"), Law Director for Broadview Heights. Weiler told Maragas that the city was not willing to let Tallyho's pole signs stand any longer. Counsel for Maragas asserted that the pole signs were legally protected by Ohio law and by constitutional law, including the law as described in *North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755 (N.D.Ohio 2000). Weiler indicated that he was familiar with the case, but he claimed that Broadview Heights' sign ordinance was entirely constitutional. On August 20, 2001, after the transfer of ownership of the hotel and a change of the signs at the motel, the city began issuing citations to XXL for violations of the sign ordinance and demanded that XXL remove the hotel's nonconforming signs.

Scottsdale issued an insurance policy to Broadview Heights for a policy term beginning September 26, 2001 and extending until September 26, 2002. This policy included the following terms:

**SECTION I–COVERAGES**

1. INSURING AGREEMENT

We will pay on behalf of the insured all "loss" resulting from "public officials wrongful act(s)" but only with respect to "claims" first made against the insured during the "policy period"

---

among counsel for Broadview Heights, the counsel for XXL involved in the teleconference on August 16, and the court confirmed that the correct date of the events is August 16, 2001. Both Broadview Heights and Scottsdale have stipulated for the record that August 16, 2001 is the correct date.

or Extended Reporting Period. The "public officials wrongful act(s)" must occur within the "coverage territory."

2. DEFENSE AND SUPPLEMENTARY PAYMENTS

We will have the right and duty to defend any "suit" against the insured even if any of the allegations of the "suit" are groundless, false or fraudulent....

\*　\*　\*　\*　\*　\*

SECTION II–EXCLUSIONS

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured: ...

2. Arising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured; ...

3. For any damage arising out of "bodily injury," or for damage to or destruction of any property, including diminution of value or loss of use thereof; ....

\*　\*　\*　\*　\*　\*

8. Arising out of:

a. Any "public officials wrongful act" which takes place prior to the policy period if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim"; ....

\*　\*　\*　\*　\*　\*

9. For "claim(s)," demands, or actions seeking relief or redress in any form other than monetary damages, or for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief; however, we will afford defense to the insured for "suit(s)" in which monetary damages are requested if not otherwise excluded; ....

\*　\*　\*　\*　\*　\*

SECTION VI–DEFINITIONS

Whenever used in this Coverage Form, the following words have these meanings:

1. "Claim" means a written notice from any party that it is their intention to hold an insured responsible for "loss" resulting from a "public officials wrongful act" covered by this Coverage Form.

\*　\*　\*　\*　\*　\*

3. "Loss" means any monetary amount which the insured is legally obligated to pay as a result of "public officials wrongful act(s)" covered by this Coverage Form and will include, but not be limited to, judgments and settlements, but "loss" will not include fines imposed by law. or matters which may be deemed uninsurable under the law pursuant to which this Coverage Form will be construed.

\*　\*　\*　\*　\*　\*

5. "Public officials wrongful act" means:

Any actual or alleged:

a. Error or omission, neglect or breach of duty;

b. Violation of civil rights protected under 42 USC 1981 et sequential [sic]; or

c. Violation of any state civil rights law;

by you or which arises out of the discharge of duties for you, individually or collectively.

6. "Suit" means a civil proceeding in which monetary damages are alleged because of a "public officials wrongful act" to which this Coverage Form applies....

Scottsdale Indemnity Company Public Entity Policy ("the policy"), Public Officials Limited Liability Coverage Form–II; attached to Def. Mot., pp. 1, 2, 5. The policy also included the following exclusions:

**A. COMMON LIABILITY EXCLUSIONS**

The following exclusions apply to the liability coverages designated in the Common Policy Declarations....

This policy does not apply to:

\* \* \* \* \* \*

6. Eminent Domain.

Any injury or damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain, inverse condemnation, adverse possession, right or prescription or dedication by adverse use or by whatever name used, whether "claim(s)" is made directly against any insured or by virtue of any agreement entered into by or on behalf of any insured.

The policy, Common Liability Exclusions and Common Liability Definitions ("Liability exclusions"), attached to Def. mot., p. 3.

XXL filed the instant action challenging the sign ordinance on November 1, 2001. XXL alleged that the sign ordinance is unconstitutional under the First, Fifth, and Fourteenth Amendments and violated Ohio law. Broadview Heights denied these allegations. XXL sought an order permanently enjoining enforcement of the sign ordinance, and it also sought $2,500,000 plus costs and expenses, including reasonable attorney fees, pursuant to 42 U.S.C. § 1983 (" § 1983").

Broadview Heights discussed XXL's complaint with its insurer, Scottsdale, on November 5, 2001. Subsequent to that discussion, Scottsdale wrote Broadview Heights and told the city that the allegations in XXL's complaint were not covered by the city's policy with Scottsdale. For this reason Scottsdale denied Broadview Heights' claim.

On November 14, 2001 the court entered an order which, *inter alia,* prohibited XXL from erecting any new signs for the motel and required that defendant Broadview Heights "shall not remove or dismantle nor cause or attempt to cause the removal or dismantling of the sign(s) referred to in the Complaint due to any noncompliance with the Codified Ordinances ...." Order (Docket # 19), pp. 1–2. On November 13, 2002, Davis removed the pole sign that his restaurant shared with the motel. Davis effected this removal upon order of the Broadview Heights Building Commissioner.

Broadview Heights filed a third-party complaint against Scottsdale on December 27, 2001, alleging breach of an insurance contract. Broadview Heights sought defense and indemnification against XXL's claims, plus reasonable attorney's fees, interest, and costs.

The court referred the case to the magistrate judge on May 7, 2002. On June 28, 2002 XXL moved for summary judgment on five grounds: (1) the ordinance impermissibly restricted speech protected by the First Amendment and the Ohio Constitution, (2) provisions in the ordinance were void for vagueness, (3) the ordinance violated the equal protection clause of the Fourteenth Amendment, (4) section 1479.14 of the ordinance violated procedural due process, and (5) the ordinance violated Ohio's protections against retroactive zoning. XXL further claimed that the unconstitutional provisions of the ordinance were not severable from the constitutional provisions and moved the court to overturn the entire ordinance. XXL's motion did not seek damages. Defendants opposed XXL's motion and themselves moved for summary judgment on XXL's claims.

On February 24, 2003 the magistrate judge issued a report and recommendation recommending that the court do the following:

(1) grant XXL's motion for summary judgment and overrule defendants' motion for summary judgment as to XXL's claims that

 (a) the ordinance unconstitutionally restricted non-commercial speech and impermissibly discriminated as to non-commercial speech according to its content,

 (b) the ordinance impermissibly discriminated as to commercial speech according to content,

 (c) the ordinance was an impermissible prior restraint of speech,

 (d) the selective prohibition on pole signs in the sign ordinance made impermissible content-based distinctions, and

 (e) Broadview Heights violated XXL's right to procedural due process in removing its pole sign;

(2) grant defendants' motion for summary judgment as to XXL's claim that Broadview Heights' application of the sign ordinance violated the equal protection clause;

(3) grant XXL's motion for summary judgment in part and overrule it in part and grant defendants' motion in part and overrule it in part as to XXL's claim that certain terms in the ordinance were void for vagueness;

(4) grant XXL's motion for summary judgment in part and overrule it in part and grant defendants' motion in part and overrule it in part as to and XXL's claim that the sign ordinance facially violated the equal protection clause;

(5) decline to rule on plaintiffs' and defendant's motions for summary judgment as to whether Broadview Heights' sign ordinance violated Ohio's ban on retroactive zoning changes;

(6) overrule plaintiffs' and defendant's motions for summary judgment as to all other claims;

(7) overturn Broadview Heights' sign ordinance *en toto* because of its violations [2] of the First Amendment; and

(8) find that the defense of qualified immunity did not protect the named individual defendants from liability.

The magistrate judge also recommended that if the court decided not to overturn Broadview Heights' sign ordinance *en toto*, the court should order the alteration of Broadview Heights' sign ordinance as described in its report and recommendation.

Broadview Heights filed its objections to the magistrate judge's report and recommendation, and on January 13, 2004 the court issued a memorandum of opinion and order adopting the report and recommendation with two exceptions: The court did not adopt the magistrate judge's recommendation that the defense of qualified immunity did not protect the named individual defendants from liability, and the court declined to overturn Broadview Heights' sign ordinance.

On June 8, 2004 XXL and Broadview Heights stipulated to an order settling their action. Among the provisions of the agreed order was the following:

Defendant City of Broadview Heights shall pay Plaintiff $150,000.00 within 45 days of the filing of this Agreed Order with the Court to settle all claims for damages in this action including, but not limited to, all alleged civil rights violations, violations of Court Orders, attorney fees and all other allegations of

**2.** The stipulation was reached after plaintiffs filed a motion for award of attorneys' fees.

wrongdoing by Defendants and/or any of their officials, employees or agents.

Agreed Order (Docket # 118), p. 2. The agreed order did not apportion the payment among damages, attorneys' fees, costs, or fines for violations of court orders, nor did it specify the legal violations which were the bases for damages.

Scottsdale and Broadview Heights now move for summary judgment on Broadview Heights' claims.

## II. Summary judgment standard

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The nonmoving party must then show the existence of a material fact which must be tried. *Id.* at 324, 106 S.Ct. 2548.

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to ... the party opposing the motion ...." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 12 Ohio Misc. 230, 369 F.2d 648 (6th Cir.1966). This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir.1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party must oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...." *Id.* A scintilla of evidence in favor of the nonmoving party is not sufficient. There must be enough evidence that a reasonable jury could find for the nonmoving party. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989).

## III. Scottsdale's motion for summary judgment

Scottsdale argues that it is not liable to Broadview Heights under the policy because: (1) the complaint against the city did not assert a loss resulting from a "public officials wrongful act"; (2) the complaint asked for relief which is not included within the policy coverage; (3) the policy excludes claims for a deliberate violation of a federal, state, or local rule; (4) the city had knowledge of the claim prior to the effective date of the policy; and (5) even if some portion of the city's settlement with XXL were covered by the policy, the city cannot carry the burden of proof required to establish its claim. Broadview Heights opposes Scottsdale's motion and argues, *inter alia*, that the policy required Scottsdale at least to defend the city because, at minimum, the allegations in XXL's complaint were potentially or arguably within the policy coverage.

*A. Whether the complaint asserts loss resulting from a "public officials wrongful act"*

 Scottsdale contends that the policy creates no duty for Scottsdale to defend the city against XXL's claims because XXL's complaint did not allege a loss resulting from a "public officials wrongful act." Scottsdale quotes the definition of that phrase as given in the policy:

"Public officials wrongful act" means:

Any actual or alleged:

a. Error or omission, neglect or breach of duty;

b. Violation of civil rights protected under 42 USC 1981 et sequential [sic]; or

c. Violation of any state civil rights law;

by you or which arises out of the discharge of duties for you, individually or collectively.

Policy at 5. Scottsdale contends that the acts alleged by XXL's complaint do not come within any of the three types of acts which would constitute a "public officials wrongful act" under the policy.

Scottsdale's argument is not well-taken. Most of XXL's claims were brought pursuant to § 1983. *See* Plaintiff's Second Amended Complaint ("Amended Complaint"; Docket # 77), p. 3. The policy covers losses resulting from violations of civil rights protected by 42 U.S.C. § 1981 "et sequential [sic]." *"Et sequentia"* is the Latin neuter plural for "and the following." BLACK'S LAW DICTIONARY (1990), pp. 553–34. In this context, the plain meaning of the phrase refers to those sections of Title 42 following 42 U.S.C. § 1981. This includes § 1983, which is found under Title 42 of the United States Code. Thus, XXL's complaint alleged acts in violation of civil rights protected under 42 U.S.C. § 1981 as well as § 1983. The alleged acts in XXL's complaint were, therefore, public officials' wrongful acts within the meaning of the policy.

*B. Whether the complaint asked for relief which is not within the policy's coverage*

Scottsdale asserts that XXL's complaint generally asked for declaratory and injunctive relief from the court and that under the policy it has no obligation to defend Broadview Heights from such claims. It also asserts that to the extent that XXL's complaint demanded damages and attorneys' fees, those damages and fees were excluded from coverage under the policy. Broadview Heights denies Scottsdale's assertions and replies in the alternative that even if the losses resulting from XXL's suit were not within the policy coverage, Scottsdale was required to defend Broadview Heights because the allegations of XXL's complaint stated claims that were potentially or arguably within the policy coverage.

The policy provides coverage for "all 'loss' resulting from 'public officials wrongful act(s) ....'" Policy at 1. The policy defines "loss" as "any monetary amount which the insured is legally obligated to pay as a result of 'public officials wrongful act(s)' ...." *Id.* at 5. The policy requires Scottsdale to defend Broadview Heights against any "suit," defined as "a civil proceeding in which monetary damages are alleged because of a 'public officials wrongful act' to which this Coverage Form applies," *id.*, unless the monetary damages requested are "otherwise excluded" by the policy, *id.* at 2. The policy explicitly excludes any obligation to defend Broadview Heights against "'claim(s),' demands, or actions seeking relief or redress in any form other than monetary damages, or for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief ...." *Id.* at 2. The policy also excludes coverage for damages arising from "the deliberate vio-

lation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured;" "damage to or destruction of any property, including diminution of value or loss of use thereof;" and "damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain ... by whatever name used ...." *Id.* at 5; Liability exclusions at 3.

■ In the instant case, XXL's complaint described the nature of the action it initiated as follows:

1. This is an action seeking an injunction against enforcement and a declaration of the invalidity of Chapter 1479 of the Codified Ordinances of the City of Broadview Heights, Ohio (hereinafter the "Sign Code"), which unconstitutionally and unlawfully restricts the freedom of expression and other protected rights of citizens of the United States and the state of Ohio.

2. This is an action for damages in that the Sign Code effectively closes a nineteen years in operation motel situated off of Route 82 near Interstate 77, thereby constituting a taking of Plaintiff's property.

Amended Complaint at 1–2.[3] The complaint also included the following prayer for relief:

WHEREFORE, the Plaintiff respectfully prays that:

1. This Court declare the Sign Code to be unlawful and unconstitutional under the First, Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 11, 16, and 19 of the Ohio Constitution;

2. Accordingly, this Court declare that the Sign Code constitutes an impermissible and unjust taking without compensation under United States Code ("U.S.C.") § 1983[sic];

3. This Court declare that the Sign Code constitutes an unlawful restriction of the lawful preexisting uses of Plaintiff's property in violation of Ohio Revised Code § 713.15 and U.S.C. § 1983[sic];

4. This Court issue a Preliminary and Permanent Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to enjoin the City, and its officers, agents, servants, attorneys and employees, and all others in active concert or participation with them who receive actual notice of said Order, from enforcing the Sign Code against the Plaintiff or against any other persons;

5. Under U.S.C. § 1983[sic], this Court awarded [sic] Plaintiff two and one-half million dollars ($2,500,000.00) in damages for Defendants' attempted taking or taking of Plaintiff's property;

6. Under U.S.C. § 1983[sic], this Court award Plaintiff all of their expenses, including reasonable attorneys' fees, and all of their costs herein; and

7. This Court grant such other and further relief as the Court may deem just and proper.

*Id.* at 13–14.[4] The suit by XXL, therefore, asked for only those damages arising from a taking in violation of § 1983 and asked

---

3. The original complaint used identical language. *See* Complaint (Docket # 1), pp. 1–2.

4. The only deviation in the prayer for relief in the original complaint came at ¶ 5:

5. Under U.S.C. § 1983, this Court award Plaintiff two and one-half million dollars ($2,500,000.00) in damages for the City's attempted taking or taking of Plaintiff's property ....

Complaint at 13. The alterations in the Amended Complaint did not change the meaning of the original.

for attorneys' fees and costs of bringing its suit.

### 1. Whether the damages sought pursuant to § 1983 were within the policy's coverage

■ Takings which violate § 1983 are exercises of eminent domain. Other than purchasing a property by agreement with the property's owner, a government may take property in two ways: by escheat and by an exercise of the power of eminent domain. A government takes property by escheat when the property has been abandoned by the owner and the government takes custody of or assumes title to that property. *See Delaware v. New York*, 507 U.S. 490, 498, 113 S.Ct. 1550, 123 L.Ed.2d 211 (1993). A compulsory taking of property from its owner is an exercise of eminent domain:

> The taking of property by condemnation under the power of eminent domain is compulsory. The party is deprived of his property against his will. It is in effect a lawful trespass committed by the sovereign, and lawful only on the condition that the damages inflicted by the trespass are paid to the injured party.

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (quoting *Beatty v. United States*, 203 F. 620, 626 (4th Cir.1913)). The requirement of the Fifth Amendment that private property taken for public use must be justly compensated is the property owner's protection against the government's power of eminent domain. *See Jacobs v. United States*, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142 (1933) ("[T]he right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain ... was guaranteed by the Constitution."); *Bauman v. Ross*, 167 U.S. 548, 574, 17 S.Ct. 966, 42 L.Ed. 270 (1897).

■ One means by which the government properly exercises eminent domain is a condemnation proceeding prior to the taking.[5] "When the government condemns property for public use, it provides the landowner a forum for seeking just compensation, as is required by the Constitution. If the condemnation proceedings do

---

**5.** The case law is muddied by the penchant of some courts for referring to condemnation proceedings as "eminent domain proceedings." *See, e.g., Agins v. City of Tiburon*, 447 U.S. 255, 258 n. 2, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), in which the court makes the following distinction between "eminent domain" and "inverse condemnation proceedings":

> Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted."

(citations omitted). Whether the proceeding is an "eminent domain proceeding" (i.e., a condemnation proceeding) or an "inverse condemnation proceeding," the *authority* by which the state justifies the taking is the state's inherent power of eminent domain.

In any case, even if inverse condemnation were somehow distinguished from eminent domain and an action pursuant to § 1983 were found to be a type of inverse condemnation proceeding, the result in the instant case would be the same. The policy explicitly excludes coverage for losses resulting from either eminent domain or inverse condemnation proceedings. So, whether an action pursuant to § 1983 is termed "eminent domain" or "inverse condemnation," Scottsdale is not obligated to reimburse or indemnify Broadview Heights for losses arising from an action pursuant to § 1983 alleging an unconstitutional taking in violation of the Fifth Amendment.

not, in fact, deny the landowner just compensation, the government's actions are neither unconstitutional nor unlawful." *City of Monterey,* 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (citations omitted). The government may also properly exercise eminent domain by providing postdeprivation proceedings, rather than predeprivation condemnation proceedings, to compensate the owner for the loss of property. *Id.*

When a government refuses fairly to compensate a property owner upon an exercise of eminent domain or refuses to provide procedures by which a property owner might win just compensation for the loss, the government violates the Fifth Amendment. *City of Monterey,* 526 U.S. at 717, 119 S.Ct. 1624; *see also Hudson v. Palmer,* 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393, n. 12 (1984). In such a case, the property owner may initiate a state action, usually referred to as an "inverse condemnation proceeding," or a federal action pursuant to § 1983, alleging a violation of the Fifth Amendment right to just compensation. *See City of Monterey,* 526 U.S. at 711–12, 714, 119 S.Ct. 1624. In either case, the property owner seeks compensation for a loss arising from the government's exercise of its power of eminent domain.

Government regulations may impose such severe restrictions on the use of property that the regulations may amount to a regulatory taking pursuant to eminent domain. "[W]hether a regulation of property goes so far that 'there must be an exercise of eminent domain and compensation to sustain the act ... depends upon the particular facts.'" *City of Monterey,* 526 U.S. at 720, 119 S.Ct. 1624 (quoting *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 67 L.Ed. 322 (1922));

*see also First Evangelical Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 321, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

In the instant case, XXL alleged that Broadview Heights' sign ordinance constituted an impermissible regulatory taking without compensation and sought a remedy pursuant to § 1983. Necessarily, XXL was alleging that Broadview Heights' sign ordinance so restricted XXL's use of its property that the city must be regarded as having taken XXL's property pursuant to the city's inherent authority of eminent domain. Paragraph 6 of the policy's liability exclusions disclaims coverage for "[a]ny injury or damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain [or] inverse condemnation ... by whatever name used ...." Liability exclusions at 3. Thus, the damages which XXL sought in its action pursuant to § 1983 against Broadview Heights were not within the policy's coverage.

*2. Whether the fees and costs sought by XXL were within the policy's coverage*

Broadview Heights asserts that XXL's request for an award of expenses, including attorneys' fees and costs, was a request for damages under Ohio law. Broadview Heights concludes, therefore, that even if other requested damages are excluded under the policy, the request for attorneys' fees and other expenses made XXL's suit a suit for damages which obliged Scottsdale to reimburse and indemnify Broadview Heights for the damages awarded and for the costs of defense.

Even if the court assumes that a request for attorneys' fees and costs is a request for damages under Ohio law,[6] however,

---

6. This is by no means certain, as the only case Broadview Heights cites in support of this proposition is an unpublished appellate court decision, *Sylvania Twp. Bd. of Trustees v. Twin City Fire Ins. Co.,* 2004 WL 226115 (Ohio App. 6 Dist. Feb. 6, 2004).

Broadview Heights' conclusion is erroneous. The policy explicitly excludes any obligation to defend Scottsdale against " 'claim(s),' demands, or actions ... for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief ...." Policy at 2. XXL's complaint sought "expenses, including reasonable attorneys' fees, and all of their costs" related to its action against Broadview Heights. The plain language of the policy excludes coverage for loss resulting from the relief sought by XXL.

Broadview Heights contends that the term "fees" in the policy exclusions is ambiguous. The city makes the following argument in support of its contention:

> Language in the policy excludes claims or awards "for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief." But this is not the only basis for the awarding of attorney fees by this Court. Rather the Court also awarded attorney fees for violations of Plaintiffs [sic] civil rights including the prosecution of twenty-five citations issued placing the Plaintiff in jeopardy of criminal conviction and $25,000 in fines. *Berger v. Mayfield Heights,* 265 F.3d 399 (6th Cir.2001).[7] It is significant that the insurer did not use the adjective "attorney" in using the word "fee" in the policy. Attorney fees often are the largest loss to a defendant in a civil rights lawsuit. There is, indeed, an ambiguity in the policy which gives coverage of civil rights violations on the one hand and purports to take it away on the other hand. This treatment is ambiguous at best and deceptive at worst. In a case heard by the United States

Court of Appeals for the Sixth Circuit, a similar ambiguity was labeled, a "studied" ambiguity and the Court concluded that "ambiguous policy provisions are to be construed against the drafter and in favor of coverage." *North Bank v. Cincinnati Ins. Cos.,* 125 F.3d 983, 986 (6th Cir.1997); *Amerisure Ins. Col.* [sic] *v. Acusport Corp.,* 2004 U.S. Dist. LEXIS 6901.

 \* \* \* \* \* \*

Ohio courts first determine whether contract terms are ambiguous. *United Nat'l Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447, 449 (6th Cir.1999). A term is ambiguous if it is reasonably susceptible of more than one meaning. *Weiss v. St. Paul Fire & Marine Ins. Co.,* 283 F.3d 790, 796 (6th Cir.2002); *Toledo–Lucas County Port Authority v. Axa Marine & Aviation Insurance,* [368 F.3d 524 (6th Cir.2004)], 2004 U.S. App LEXIS 8887. Where an insurance policy includes ambiguous exclusions, "a general [presumption] to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.["] *Moorman v. Prudential Ins. Co. of Am.* (1983), 4 Ohio St.3d 20, 445 N.E.2d 1122. The exclusion "must be stated clearly in explicit wording setting forth with specificity exactly what is to be excluded." *American Financial Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 173, 239 N.E.2d 33. "The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 64, 543 N.E.2d 488. The insurer, not the insured bears the burden of proving the applicability of an

---

7. *Berger* is apparently cited for the proposition that attorneys' fees are awardable under § 1983, a point the court is willing to concede.

exclusion in its policy. *Cont'l Ins. Co. v. Louis Marx & Co.* (1980), 64 Ohio St.2d 399, 401, 415 N.E.2d 315.

Response of Third Party Plaintiffs in Opposition ("Pl. opp."; Docket # 123), unnumbered pages.

Broadview Heights' argument does not convince this court. Merely because the word "attorneys"' does not precede "fees" does not make "fees" ambiguous. The policy excludes coverage for "*any* fees," without qualification. That is clear and unambiguous, and the expression is not made ambiguous upon a showing that "[a]ttorney fees often are the largest loss to a defendant in a civil rights lawsuit." If Broadview Heights had wanted coverage for loss due to an award of attorneys' fees, it should have bargained and paid for such coverage. The plain language of the policy shows that it did not.

The cases cited in support of the city's contention that the term "fees" is ambiguous provide no help. First, *North Bank*, although a Sixth Circuit case, applies Michigan law and is irrelevant to a case applying principles of Ohio's contract law. Second, a search of all federal cases reveals no case with both "Amerisure" and "Acusport" in its caption. Third, the cases cited for the propositions that ambiguities in a policy's terms are construed against an insurer, that exclusions must be stated with specificity, and that the insurer bears the burden, when necessary,[8] of proving the applicability of an exclusion are beside the point. These principles are applied only if a court first determines that a policy term is ambiguous. There is no

ambiguity in the instant case. The policy's exclusion for loss resulting from an obligation to pay any fee unambiguously excludes loss resulting from an obligation to pay attorneys' fees, costs, or other expenses.

Even if Broadview Heights is correct in its contention that a request for attorneys' fees and costs is a request for damages under Ohio law, loss arising from an award to XXL for such expenses was excluded from coverage under the policy.[9]

### 3. Whether XXL's complaint stated claims that were potentially or arguably within the policy's coverage

Broadview Heights contends that even if the losses resulting from XXL's suit were not within the policy's coverage, Scottsdale was required to defend Broadview Heights because the allegations of XXL's complaint stated claims that were potentially or arguably within the policy's coverage. Broadview Heights cites *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555 (1984), in support of its contention.

In *Willoughby Hills* the Ohio Supreme Court found that Ohio's adoption of notice pleading by reformation of the Ohio Rules of Civil Procedure meant that a civil action was no longer strictly limited to issues raised in the pleadings:

Like the federal system, . . . [n]o longer must a complaint set forth specific factual allegations. All that Civ.R. 8(A) requires is ". . . (1) a short and plain statement of the claim showing that the

---

**8.** In *Continental Insurance* the insurance company was required to prove that the injury in question did not result from the failure of the insured's product to perform the function or serve the purpose intended by the insured. There is no similar factual issue which Scottsdale must prove in the instant case before the court can determine whether

the exclusion for loss resulting from payment of any fee applies.

**9.** Nor would an argument that Scottsdale must indemnify Broadview Heights for loss resulting from the city-ordered removal of the pole sign fare any better, as the policy specifically excludes loss resulting from property damage.

pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled...." It follows that the pleadings alone may not provide sufficient factual information to determine whether the insurer has an obligation to defend the insured. It remains true that where the pleadings unequivocally bring the action within the coverage afforded by the policy, the duty to defend will attach. However, where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim. Thus, the "scope of the allegations" may encompass matters well outside the four corners of the pleadings.

*Willoughby Hills,* 9 Ohio St.3d at 180, 459 N.E.2d at 558.

█ The problem with Broadview Heights' argument is that it fails to demonstrate that allegations in XXL's complaint stated a claim potentially or arguably within the policy's coverage or to show that there is some doubt as to whether some theory of recovery within the policy's coverage had been pleaded. The city cites the claim brought pursuant to § 1983 *as pled* as an example of a claim within the policy's coverage but, as has already been shown, this claim was unequivocally outside the policy's coverage. The city also faults Scottsdale's reliance on "[t]he wording chosen by the Plaintiff in its prayer for relief ... in attempting to avoid its obligations under the insurance contract that it drafted," Pl. opp., unnumbered pages, but it follows this by asserting that XXL's demand for expenses, including attorneys' fees and costs, and such other relief as the court deemed just and proper required

Scottsdale to defend Broadview Heights and pay for all loss resulting from public officials' wrongful acts. As has been shown, the policy clearly and unmistakably excluded coverage for any fees, costs, or expenses. Nor is the court inclined to find that the amorphous prayer for "such other relief as the court deems just and proper" is sufficient to potentially or arguably raise a claim within the policy's coverage or raise doubt as to whether some theory of recovery within the policy's coverage had been pleaded. To do so would make policy limitations on the insurer's right to defend depend upon whether the plaintiff had added the appropriate boilerplate typically found at the close of civil complaints. This would be a return to the meaningless formalism that notice pleading was meant to abolish.

The court concedes that *Willoughby Hills* stands for the proposition which Broadview Heights culls from that case. Broadview Heights fails, however, to show the applicability of that proposition to the instant case. For this reason the court finds that *Willoughby Hills* did not require Scottsdale to defend Broadview Heights against the allegations in XXL's complaint.

In sum, XXL's action against Broadview Heights was generally an action for declaratory and injunctive relief. The policy explicitly declared that Scottsdale had no obligation to defend Broadview Heights against such actions. To the extent that XXL's action sought damages from Broadview Heights, the requested damages arose from Broadview Heights' alleged uncompensated exercise of eminent domain and the payment of XXL's attorneys' fees. The policy excluded coverage for losses arising from such sources, and the policy also stated that Scottsdale had no obligation to defend Broadview Heights against actions for damages which were excluded from coverage under the policy.

Nor did the holding in *Willoughby Hills* otherwise require Scottsdale to defend Broadview Heights against the allegations in XXL's complaint. For these reasons Scottsdale had no obligation to defend Broadview Heights against XXL's action and has no obligation to reimburse Broadview Heights for losses resulting from XXL's suit.

### C. Whether XXL's action sought relief resulting from Broadview Heights' deliberate violation of federal law

Scottsdale argues that it is not liable to Broadview Heights under the policy because Broadview Heights' sign ordinance was a deliberate violation of federal law and the policy excludes claims for a deliberate violation of a federal law. This argument is not well taken.

Scottsdale's argument is based on *North Olmsted.* The Federal District Court for the Northern District of Ohio issued its decision in *North Olmsted* on January 21, 2000. The sign ordinance at issue in *North Olmsted* was remarkably similar to Broadview Heights' sign ordinance, and the *North Olmsted* court explicitly rejected many of the arguments that Broadview Heights made in the instant case. XXL drew the city's attention to the decision in *North Olmsted* and warned that the decision indicated that Broadview Heights' sign code was problematic. The city nevertheless began issuing citations to XXL for violations of the sign ordinance on August 20, 2000. XXL's complaint alleged that the city deliberately ignored controlling precedent holding that their sign ordinance was unlawful. Scottsdale now argues that the city's decision to ignore *North Olmsted* and enforce Broadview Heights' sign ordinance against XXL was a deliberate violation of federal law.

 Scottsdale's argument is precluded by the law of the case. In Judge Matia's Memorandum of Opinion and Or-der of January 13, 2004 ("Memo.") the court found that the law relevant to the instant case was not sufficiently clear that a reasonable official would understand that Broadview Heights' sign ordinance violated XXL's constitutional rights:

> Although a prior case in this district struck down a similar ordinance, *North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755 (N.D.Ohio 2000), there has been no decision by the Court of Appeals for the Sixth Circuit. In fact, certain aspects of the Broadview Heights sign code were previously upheld by this Court. Additionally, other district courts have disagreed with the *North Olmsted* analysis. Thus it cannot be said that the law was clearly established when the city officials took the action that led to this complaint.

Memo. at 2–3 (citations omitted). Having already found that the law was insufficiently clear to allow a reasonable official to know that enforcing the sign ordinance violated XXL's constitutional rights, the court cannot now find that the decision to enforce the sign ordinance was a deliberate violation of federal law. For this reason the court rejects Scottsdale's argument.

### D. Whether the city had knowledge of the claim prior to the effective date of the policy

 Scottsdale contends that prior to the effective date of the policy Broadview Heights had knowledge of circumstances which could reasonably be expected to give rise to a claim against it. Because the city failed to notify Scottsdale of XXL's potential claim, Scottsdale argues, losses arising from XXL's action against Broadview Heights are excluded from coverage under the policy.

Section II of the policy provides as follows:

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured: . . . .

8. Arising out of:

 a. Any "public officials wrongful act" which takes place prior to the policy period if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim" . . . . .

Policy at 2. The policy defined a "claim" as "a written notice from any party that it is their intention to hold an insured responsible for 'loss' resulting from a 'public officials wrongful act' covered by this Coverage Form." *Id.* at 5.

The policy period began on September 26, 2004. Prior to the policy period the architectural review board knew that (1) XXL had sought and was refused a variance for the signs at the Tallyho Motel, (2) Maragas contended that he was unable to do business without the requested variance and would not have bought the hotel if he had known of the sign code, and (3) Maragas contended that the refusal to allow him to keep his signs was overreaching and a denial of due process. Also prior to the policy period the Law Director for Broadview Heights knew that (1) Maragas' counsel was familiar with the *North Olmsted* case, and (2) Maragas' counsel claimed that the hotel's signs were protected by the federal constitution and by Ohio law. On August 20, 2001 the city began issuing daily citations to XXL, each citation potentially involving a $1,000 fine and six months in jail. Given these circumstances, Broadview Heights would know that XXL could reasonably be expected to notify Broadview Heights in writing that it intended to hold the city responsible for losses resulting from what it regarded as city officials' wrongful acts. For this rea-son losses resulting from XXL's suit are excluded by subsection II.8.a. of the policy.

*E.* *Whether the city can carry the burden of proof required to establish its claim*

Scottsdale asserts that even if some portion of the loss entailed by the $150,000 settlement which Broadview Heights entered into with XXL were covered by the policy, Broadview Heights cannot carry its burden of proof of distinguishing the covered portion of the settlement from portions of the settlement which are not covered. Broadview Heights does not respond to Scottsdale's argument. However, as the court finds that no portion of the settlement represents a loss covered by the policy, this issue is moot.

*F.* *Summary*

The policy declared that Scottsdale had no obligation to defend Broadview Heights against the claims brought by XXL and excluded coverage for those damages which XXL alleged. The policy also excluded coverage from losses resulting from XXL's suit because Broadview Heights had knowledge of circumstances which could reasonably be expected to give rise to the claims brought by XXL. For these reasons the court grants Scottsdale's motion for summary judgment.

IV.

For the reasons given above the magistrate judge recommends that the court grant Scottsdale's motion for summary judgment and, in doing so, overrule Broadview Heights' motion for summary judgment.

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of

this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir.1981). *See also Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).